# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ALMER HARGRAVE,**

    **Plaintiff,**

**v.**                                                            **Case No. 8:08-cv-1966-T-30MAP**

**GE AVIATION SYSTEMS, LLC,**

    **Defendant.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff's Motion for Summary Judgment (Dkt. 17), Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. 32), Defendant's Motion for Summary Judgment (Dkt. 38), and Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (Dkt. 41). The Court, having reviewed the motions, responses, declarations, Plaintiff's deposition transcript, and being otherwise advised in the premises, finds that Defendant's Motion for Summary Judgment (Dkt. 38) should be granted and Plaintiff's Motion for Summary Judgment (Dkt. 17) should be denied.

## BACKGROUND

Defendant GE Aviation Systems LLC ("Defendant") is involved in the aviation industry. It produces avionics, power, and mechanical components for commercial and military use. Defendant is not a licensed health care practitioner or regulated by the Florida Department of Health.

Plaintiff Almer Hargrave ("Plaintiff") began his employment with Defendant in September 2004 as a Technician. Plaintiff's job duties required him to solder electronic equipment used on military aircraft.

On approximately May 6, 2008, Plaintiff underwent an annual physical examination. Plaintiff mentioned to his physician that he was experiencing frequent headaches and Plaintiff's physician recommended a blood test. The following week, Plaintiff received his initial blood test results, which revealed excessive levels of the heavy metal cadmium in Plaintiff's blood. Plaintiff's physician recommended a second blood test to verify the first blood test's accuracy regarding the excessive level of cadmium. Accordingly, on approximately May 15, 2008, Plaintiff underwent a second blood test. Plaintiff received the second blood test results approximately two weeks later. The second test confirmed elevated cadmium levels.

On June 23, 2008, Plaintiff presented the blood test results to Kelly Lundquist ("Lundquist"), a member of Defendant's Human Resources Department. Lundquist and Plaintiff then went to see Toni Summers ("Summers"), Defendant's Human Resources Director. Summers told Lundquist to provide the results to Steven Effa ("Effa"), Defendant's Senior Security Specialist, Import/Export Focal Point, because he was responsible for workplace safety as part of his job duties.

Upon receipt of the results, Effa completed paperwork to initiate a workers' compensation claim and met privately with Plaintiff to discuss the matter. Effa and Plaintiff

discussed the chemicals Plaintiff regularly was exposed to in performing his job duties and Effa told Plaintiff that he was going to send him to Defendant's doctor.

On or about June 23, 2008 and June 24, 2008, Plaintiff voluntarily told several co-workers and his supervisor, Joe Grimming, about his cadmium exposure. The co-workers included Victor Fuentes, Miranda Rivera, Glen Prinz, Rich Grajera, and Kay Dang. Plaintiff never requested that his co-workers keep this information confidential and he did not know if they told anyone else about his blood test results.

Defendant retained A2L Technologies ("A2L") to conduct exposure testing in order to determine whether Plaintiff's blood test results were related to a potential over-exposure to cadmium while performing his job duties. At the time that A2L was retained, Plaintiff's name was not revealed, but Effa indicated that an employee may have been over-exposed to the chemical at work.

On June 24, 2008, John Henderson ("Henderson") from A2L met with Effa to discuss the exposure tests and inspect Defendant's facility. Henderson also met with Plaintiff at Plaintiff's workstation. As part of its investigation, A2L requested information regarding Defendant's facility, the type of materials used at Defendant's facility, and the type of work conducted in the areas Plaintiff frequently visited. A2L also requested specific information regarding Plaintiff's actual symptoms and the amount of cadmium in his blood. Effa provided A2L with a copy of Plaintiff's blood test results. Effa understood that only the individuals at A2L that would be conducting the exposure tests at Defendant's facility would review the blood test results and that A2L would not disclose the tests to any third parties.

On June 27, 2008, A2L conducted the exposure tests at Defendant's facility. A2L relied upon the information contained within Plaintiff's blood test results to maximize the effectiveness of the tests. The information was not used for any other purpose.

In July 2008, A2L provided Defendant with a copy of its draft report regarding the exposure tests. Henderson and Kent Ward of A2L ("Ward") prepared the report outlining the tests and their findings. Larry Schmaltz ("Schmaltz"), A2L's President and CEO, reviewed the report before it was forwarded to Defendant. Henderson, Schmaltz and Ward were the only three people who reviewed the report or Plaintiff's blood test results. The Report and Plaintiff's blood test results were not made available to any third parties. Plaintiff was also provided a copy of the report.

Plaintiff's Amended Complaint (Dkt. 20) claims that Defendant violated Plaintiff's privacy right under Florida law when it provided Plaintiff's blood test results to A2L (Count I). Plaintiff also claims that Defendant committed negligence per se because it violated numerous Florida Statutes that relate to the protection of a person's confidential medical information (Count II). Within Count II, Plaintiff also appears to assert a claim under the doctrine of *res ipsa loquitur*.

Both parties moved for summary judgment on Plaintiff's claims.[1] For the reasons discussed herein, the Court finds that Defendant is entitled to summary judgment on Counts

---

[1] Plaintiff, who is *pro se*, did not conduct any discovery in this case.

I and II of Plaintiff's Amended Complaint, as a matter of law, and the record is devoid of any material disputed facts.

## DISCUSSION

### I. Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. Id. Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. Id. at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. The evidence must be significantly probative to support the claims. Anderson, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. Fernandez v. Bankers Nat'l Life Ins. Co., 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson, 477 U.S. at 248; Hoffman v. Allied Corp., 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989).

## II. Legal Analysis

### A. Count I - Plaintiff's Claim that Defendant Invaded His Privacy Right

Plaintiff claims in Count I of the Amended Complaint that Defendant invaded his privacy through the public disclosure of private facts when it provided Plaintiff's blood test results to A2L. Florida has adopted the Restatement's test of invasion of privacy based on publication of private facts. Cape Publications, Inc. v. Hitchner, 549 So. 2d 1374 (Fla. 1989). To assert such a claim, a plaintiff must prove four elements:

    1. the disclosure was public;
    2. private facts were disclosed;
    3. the matter publicized was highly offensive to a reasonable person; and
    4. the matter is not a legitimate concern to the public.

Hitchner, 549 So. 2d at 1377 (citing Restatement (Second) of Torts § 652D (1977)); see also Heath v. Playboy Enterprises, Inc., 732 F. Supp. 1145, 1148 (S.D. Fla. 1990).

Defendant argues, in part, that Plaintiff cannot establish the first element because the disclosure of Plaintiff's test results was not public as a matter of law. The Court agrees that the record reflects that the disclosure of Plaintiff's test results was not "public" as defined under Florida law.

Specifically, in order to be "publicized," the disclosure of private facts must be made to a sufficient number of people. In <u>Williams v. City of Minneola</u>, the court held that:

> First, the publicity given to private facts must be *to the public at large or to so many persons that the matter must be regarded as substantially certain to become public knowledge*. Restatement (Second) of Torts § 652D, Comment a. <u>See</u> <u>also</u> <u>Steele v. Offshore Shipbuilding, Inc.</u>, 867 F.2d 1311 (11th Cir. 1989); <u>Santiesteban v. Goodyear Tire & Rubber Co.</u>, 306 F.2d 9 (5th Cir. 1962); <u>Lewis v. Snap-on Tools Corp.</u>, 708 F. Supp. 1260 (M.D. Fla. 1989) . . . [I]n the case before us very few people were involved, and there was no substantial certainty that because of the appellees' actions the pictures of the autopsy would be publicly disseminated.

575 So. 2d 683, 689 (Fla. 5th DCA 1991) (emphasis added). In <u>Lewis</u>, the court held that "[d]isclosure to a small group of persons who have an obvious interest in the subject matter of the disclosure is not sufficiently public to state a cause of action for invasion of privacy." 708 F.Supp. at 1261. Rather, the disclosure must be to a "large number of persons, rather than an individual or a few." <u>Id.</u> at 1262.

In this case, the record is clear that only three individuals at A2L reviewed Plaintiff's blood test results. Moreover, A2L's report and Plaintiff's blood test results were never provided to a third party. Clearly, the disclosure to merely three people, who had an obvious interest in the subject matter, was not sufficiently public to state a cause of action for invasion of privacy as a matter of law. Plaintiff's Motion for Summary Judgment and

Plaintiff's Response to Defendant's Motion for Summary do not point to any record evidence rebutting the fact that Henderson, Schmaltz, and Ward of A2L were the only three people who reviewed the report regarding the exposure testing and Plaintiff's blood test results. Plaintiff also does not point to any evidence demonstrating that the report or Plaintiff's blood test results were provided to a third party[2].

Accordingly, Defendant is entitled to summary judgment as to Count I of Plaintiff's Amended Complaint.

### B. Count II - Plaintiff's Claims that Defendant Negligently Disclosed Plaintiff's Blood Test Results

### 1. Negligence Per Se.

Plaintiff claims in Count II of the Amended Complaint that Defendant committed negligence per se when it disclosed Plaintiff's blood test results to A2L. Plaintiff alleges that this act constituted a violation of various Florida statutes. Defendant argues that Plaintiff cannot establish a claim for negligence per se because the record demonstrates that Plaintiff is not a member of the class of persons that the Florida statutes were intended to protect.

"A cause of action in negligence per se is created when a penal statute is designed to protect a class of persons, of which the plaintiff is a member, against a particular type of harm." Newsome v. Haffner, 710 So. 2d 184, 186 (Fla. 1st DCA 1998), *rev. denied,* 722 So. 2d 193 (Fla.1998). In Florida, violations of two types of statutes may establish negligence

---

[2] Notably, Plaintiff's attachment of A2L's report, unredacted, to his original complaint in this action, ensures that the information contained therein shall be "substantially certain to become public knowledge." (Dkt. 1).

per se.  First, negligence per se is established by violation of a "strict liability" statute, which is "designed to protect a particular class of persons from their inability to protect themselves." deJesus v. Seaboard Coast Line R.R. Co., 281 So. 2d 198, 201 (1973) (citing Tamiami Gun Shop v. Klein, 116 So. 2d 421 (Fla.1959)).  Strict liability statutes comprise a narrow group of "unusual and exceptional statutes," including child labor laws and statutes prohibiting the sale of firearms to minors.  Eckelbarger v. Frank, 732 So. 2d 433, 435-36 (Fla. 2d DCA 1999).

Second, negligence per se is demonstrated by violation of "any other statute which establishes a duty to take precautions to protect a particular class of persons from a particular injury or type of injury."  deJesus, 281 So. 2d at 201.  The plaintiff must establish that he "suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury."  Id.  The Florida Supreme Court has held that a violation of any other type of statute, such as traffic regulations, is considered only prima facie evidence of negligence.  Id.

In this case, Plaintiff alleges that Defendant's disclosure of Plaintiff's blood tests to A2L violated Fla. Stat. § 760.50(5), Fla. Stat. § 456.057(7)(a), and Fla. Stat. § 395.3025(4)[3].  Under Florida law, the Court finds that the record is clear that these statutes were not designed to protect Plaintiff and do not apply to the undisputed facts of this case.

---

[3] These statutes are not "strict liability" statutes.

Fla. Stat. § 760.50 was enacted to prevent employers from discriminating against individuals on the basis of AIDS, AIDS-related complex, and HIV. See X Corp. v. Y Person, 622 So. 2d 1098, 1100 (Fla. 2 DCA 1993). Plaintiff testified during his deposition that Defendant did not disclose any information about Plaintiff having AIDS, AIDS-related complex, or HIV. The Court is not aware of any Florida case applying Fla. Stat. § 760.50(5) to a person, such as Plaintiff, who is not adversely affected from discrimination based upon AIDS, an AIDS-related condition, or HIV. Thus, Plaintiff did not suffer an injury of the type that Fla. Stat. § 760.50 was designed to prevent.

Plaintiff also did not suffer an injury that is protected by Fla. Stat. § 456.057(7)(a) or Fla. Stat. § 395.3025(4). A review of Fla. Stat. 456.057, which is known as the medical records subpoena statute, demonstrates that it governs health care professions, regulated by the Florida Department of Health. See Limbaugh v. State, 887 So. 2d 387 (Fla. 4th DCA 2004) (noting that purpose of medical records subpoena statute [Section 456.057(7)] is to require health care providers to recognize their patient's right of privacy in the records they create and maintain). The record is clear that Defendant is involved in the aviation industry, is not a licensed health care practitioner, and is not regulated by the Florida Department of Health.

Similarly, Section 395.3025(4) only applies to a "licensed facility" and was enacted "for the protection of public health and safety in the establishment, construction, maintenance, and operation of hospitals, ambulatory surgical centers, and mobile surgical

facilities by providing for licensure of same and for the development, establishment, and enforcement of minimum standards with respect thereto." See Fla. Stat. § 395.001. Thus, this statute also cannot apply to Defendant or the facts of this case.

Accordingly, Plaintiff's claim that Defendant committed negligence per se must fail, as a matter of law, because the Florida Statutes Plaintiff relies upon simply were not designed to protect Plaintiff from the alleged injury he suffered and are not relevant to the undisputed facts of this case.

### 2. *Res Ipsa Loquitur*

Plaintiff's Amended Complaint appears to assert a claim under the doctrine of res ipsa loquitur. Defendant argues that this doctrine does not apply to Plaintiff's claims, as a matter of law, because Plaintiff cannot demonstrate that direct proof of negligence is wanting or unavailable.

The doctrine of res ipsa loquitur applies, ". . . when direct evidence of negligence is unavailable to the plaintiff due to the unusual circumstances of the injuring incident." Benigno v. Cypress Community Hospital, Inc., 386 So. 2d 1303, 1304 (Fla. 4th DCA 1980) (citing Goodyear Tire & Rubber Co. v. Hughes Supply, Inc., 358 So. 2d 1339, 1341 (Fla. 1978)). Plaintiff does not state how this doctrine applies to the facts of his case. A review of the record, however, reveals that Plaintiff is asserting direct evidence of Defendant's negligence, i.e., that Defendant's disclosure of Plaintiff's blood tests to A2L was a negligent act. Thus, the doctrine cannot apply to this case, as a matter of law, because, under Florida

law, it is only appropriate when direct evidence of a party's negligence is wanting or unavailable.

Accordingly, Defendant is entitled to summary judgment on Count II of Plaintiff's Amended Complaint, because Plaintiff cannot establish negligence claims under a theory of negligence per se or the doctrine of *res ipsa loquitur*.

## CONCLUSION

For the reasons set forth herein, it is ORDERED AND ADJUDGED that:

1. Defendant's Motion for Summary Judgment (Dkt. 38) is hereby **GRANTED**.

2. Plaintiff's Motion for Summary Judgment (Dkt. 17) is hereby **DENIED**.

3. The Clerk shall enter **FINAL JUDGMENT** in favor of Defendant GE Aviation Systems LLC and against Plaintiff Almer Hargrave.

4. The Clerk is also directed to **CLOSE** this case and render any pending motions moot.

**DONE** and **ORDERED** in Tampa, Florida on July 29, 2009.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Even\2008\08-cv-1966.msjs.frm